Argued June 7, affirmed September 7, 1967

# BENNET ET AL, *Respondents, v.* CITY OF OCEANLAKE, *Appellant.*

### 430 P. 2d 1004

*Howard A. Rankin,* Portland, argued the cause for appellant. With him on the briefs were Shuler, Rankin, Myers & Walsh and T. R. Adams, Portland.

*Eugene E. Marsh,* McMinnville, argued the cause for respondents. With him on the brief were Marsh, Marsh, Dashney & Cushing, McMinnville.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, GOODWIN and HOLMAN, Justices.

GOODWIN, J.

Owners of certain city lots sued the city of Oceanlake to quiet title. They sought to strike down the city's liens under an assessment for street and sewer improvements. From a decree of the circuit court declaring the liens void for failure to comply with ORS 223.387 to ORS 223.399 the city appeals.

On July 1, 1963, the city council by resolution authorized the improvement of Rhododendron Street. By February 11, 1964, the council had approved detailed plans and specifications, ordered the advertisement for bids and awarded contracts for construction of the improvements. The work was completed in due course. At no time prior to the commencement of the work was notice of the contemplated improvements given to the property owners who would have to pay

for them. Such notice is specifically required by ORS 223.389.①

On July 8, 1964, the city council directed by resolution that the cost of the improvements be assessed against the property owners benefited thereby. Notices were mailed to the owners advising of the proposed assessments and notifying the owners of a meeting at which the city council would consider remonstrances against the assessments. The meeting was held at the time and place stated in the notices. Thereafter the

① ORS 223.389. "The council may prescribe by ordinance or resolution the procedure to be followed in making local assessments for benefits from a local improvement upon the lots which have been benefited by all or part of the improvement, to the extent that the city charter does not prescribe the method of procedure. The ordinance or resolution prescribing the same shall provide for adoption or enactment of an ordinance or resolution designating the improvement as to which an assessment is contemplated, describing the boundaries of the district to be assessed. Provision shall be made for at least 10 days' notice to owners of property within the proposed district in which the local improvement is contemplated, which notice may be made by posting, by newspaper publication or by mail, or by any combination of such methods. Such notice shall specify the time and place where the council will hear and consider objections or remonstrances to the proposed improvement by any parties aggrieved thereby. If the council determines that the local improvement shall be made, when the estimated cost thereof is ascertained on the basis of the contract award or city departmental cost, or after the work is done and the cost thereof has been actually determined, the council shall determine whether the property benefited shall bear all or a portion of the cost. The recorder or other person designated by the council shall prepare the proposed assessment to the respective lots within the assessment district and file it in the appropriate city office. Notice of such proposed assessment shall be mailed or personally delivered to the owner of each lot proposed to be assessed, which notice shall state the amounts of assessment proposed on that property and shall fix a date by which time objections shall be filed with the recorder. Any such objection shall state the grounds thereof. The council shall consider such objections and may adopt, correct, modify or revise the proposed assessments and shall determine the amount of the assessment to be charged against each lot within the district, according to the special and peculiar benefits accruing thereto from the improvement, and shall by ordinance spread the assessments."

council adopted an ordinance which ordered the recording of a lien against each of the benefited properties for the apportioned share of the cost of the improvements.

The plaintiffs brought this suit upon the theory that the failure of the city to give notice of the proposed improvements and an opportunity to remonstrate prior to the letting of contracts deprived the city of jurisdiction to levy assessments for the work. The city moved to dismiss the case as a collateral attack upon the legislative judgment of the city's governing body. That motion was denied. The city then asserted a defense on the merits. The city contends that under its charter and ordinances notice to owners is not required before the work is commenced.

██ There was no error in denying the city's motion to dismiss. The plaintiffs are challenging the procedures followed by the city council in making and funding the improvements, not the decision to make improvements. The sufficiency of the procedure underlying special assessments traditionally has been subject to judicial review. *Jones v. City of Salem,* 63 Or 126, 132, 123 P 1096 (1912). See generally, 14 McQuillin, Municipal Corporations § 38.177 (3d ed 1950). A suit to quiet title is one method used to challenge such procedure. See, e.g., *Duniway v. Cellars-Murton Co.,* 92 Or 113, 120, 170 P 298, 179 P 561 (1919).

The cases cited by the city for the proposition that a court will not entertain a collateral attack upon a city's legislative judgment have involved attempts to set aside assessments for alleged errors in governmental judgment. See, e.g., *Crocker v. City of Albany,* 241 Or 180, 405 P2d 364 (1965) (variance between estimated and actual cost of improvements) ; *Austin v. Tillamook City,* 121 Or 385, 254 P 819 (1927) (contro-

versy over alleged benefits from improvement). In none of the cited cases did the court refuse to examine the council's action for procedural regularity.

On the merits, this case turns on the statutes which, in the absence of charter provisions, specify in detail the procedure to be followed by city governments in making assessments for local improvements. Among other requirements, at least ten days' notice and an opportunity to remonstrate must be given to affected property owners before a proposed improvement is commenced. After the work is completed and the costs are known, a second notice and opportunity to protest must be given before a specific assessment becomes a lien. ORS 223.389.

However, ORS 223.399 provides:

> "The council may impose additional procedural requirements. The procedural provisions of ORS 223.387 to 223.399 shall apply only where the city charter does not specify otherwise * * *."②

The phrase "only where the city charter does not specify otherwise" in ORS 223.399 may have been intended to mean that the general statutory requirements do not apply to city improvements if the city has, by its charter, substituted other procedures for those enumerated in the statute. On the other hand, the language in the context of the section may mean only that when the city imposes additional procedural safeguards they must be complied with as well as the minimum statutory steps which apply to all cities. Since the charter of the city of Oceanlake has neither substituted new procedures nor increased the procedural requirements of the statutes for making assess-

---

② A 1965 amendment to ORS 223.399 which permits cities by ordinance as well as by charter to "provide otherwise" has no application to the assessments levied in 1964.

ments, it is not necessary to resolve the statutory ambiguity at this time.

■■ Chapter IX, § IX-2, of the charter of the city of Oceanlake provides:

> "The procedure for levying special assessments for public improvements or other services to be charged against real property shall be governed by ordinance."

Pursuant to the quoted charter provision, numerous ordinances providing for street, curb and sewer improvements have been adopted by the city council. The ordinance now being challenged provided only for notice of proposed assessments before the effective date of a final levy. (This is the second of the two notices mentioned in ORS 223.389.) The ordinance made no provision for the first notice required by ORS 223.389, which refers to contemplated improvements. Such ordinances cannot, by mere silence, negate an express statutory provision for prior notice and an opportunity for remonstrances. See *Boyle v. City of Bend*, 234 Or 91, 98, 380 P2d 625 (1963). Since the city concedes that it did not comply with the provisions of ORS 223.389 and since the charter did not contain substitute notice provisions, the liens imposed for the improvements to Rhododendron Street are void. The decree quieting title to the land of the plaintiffs is without prejudice, however, to whatever rights, if any, the city may have to undertake re-assessment proceedings.

Affirmed.