Argued August 22, affirmed September 23, reconsideration denied
November 13, petition for review denied December 17, 1974

VON WALTER, *Appellant, v.* CITY OF CANBY,
*Respondent.*

526 P2d 599

*Vincent G. Robeson,* Lake Oswego, argued the cause and filed the briefs for appellant.

*Wade P. Bettis, Jr.,* Canby, argued the cause for respondent. With him on the brief were Bettis & Reif, Canby.

Stanley E. Erickson and Wilson & Erickson, Portland, filed a brief amici curiae for the Portland Police Association and the Oregon Council of Police Associations.

John W. Osburn, City Attorney, Portland, and Thomas R. Williams, Deputy City Attorney, Portland, filed a brief amici curiae for the City of Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

This case arises out of a dispute between the City of Canby and five of its police officers over the right of the police to receive 'overtime pay.' Plaintiff, who was the former chief of police, brought this action on his own behalf and as assignee of similar claims of

four fellow police officers, seeking damages for the City's refusal to compensate them in full for 'overtime' work. All were employed on a monthly salary basis.

The circuit court sustained defendant's demurrer to plaintiff's fourth amended complaint on the grounds that plaintiff's complaint failed to state a cause of action. Plaintiff appeals from the judgment for defendant entered following the order of the circuit court sustaining defendant's demurrer.

In his complaint plaintiff alleged that he and his assignors were required by defendant to work 4,922¼ overtime hours between January 1969 and June 1973; that defendant compensated plaintiff and his assignors for 2,624 of these hours and at the regular rate, not overtime rate; and that there were 2,298¼ hours for which they received no compensation.

Plaintiff further alleged that all compensation should have been at the overtime rate (one and one-half times) rather than at the regular rate; that inasmuch as plaintiff is no longer employed by defendant and cannot receive compensatory time, he is now entitled to damages for defendant's refusal to make such compensation.

Plaintiff bases his alleged cause of action in part upon ORS 279.340, which he contends provides compensation to public officers for overtime hours worked, particularly subsection (1) thereof, inasmuch as Clackamas County has a population of less than 300,000. Plaintiff also alleges that defendant's refusal to compensate plaintiff and his associates for labor performed at the specific instance of defendant, violates the standards set forth in the Fifth Amendment to the United States Constitution in that it deprives

plaintiff of his property without due process of law guaranteed by the Fourteenth Amendment.

Although this statute has since been amended, at the time this case arose ORS 279.340 provided as follows:

"Labor directly employed by a county, municipality, municipal corporation * * * shall be allowed overtime as follows:

"(1) In counties of less than 300,000 population, overtime shall be allowed in such manner as may be determined by the county, municipality, municipal corporation * * *, but such compensation shall not be less than time and a half off for employment in excess of eight hours in any one day or 44 hours in any one week. Any county, municipality, municipal corporation * * * regularly working employes less than 44 hours per week may compensate for overtime worked in excess of the regularly scheduled work time.

"* * * * * *"

Also at that time, ORS 279.342 provided as follows:

"The provisions of ORS 279.340 relating to pay for overtime shall not apply to:

"(1) Labor employed in forest fire fighting.

"(2) Employes of any irrigation system district actually engaged in the distribution of water for irrigation or domestic use.

"(3) Fire or police protection personnel employed by any fire or police department of any municipal corporation.

"* * * * * *"

Defendant makes the following points in support of its position that the trial judge did not err in sustaining defendant's demurrer.

(1) Under the home rule amendment to the Ore-

gon Constitution (Art XI, § 2), defendant City has been granted exclusive authority to legislate on purely local affairs, and has done so with relation to this subject, citing *State ex rel Heinig v. Milwaukie et al*, 231 Or 473, 373 P2d 680 (1962).

(2) Plaintiff did not comply with the terms of defendant's municipal legislation[1] authorizing overtime compensation for city police officers under certain conditions, and therefore is not entitled to any overtime pay.

(3) Even if defendant City is not exempt from state regulation under the home rule amendment, police officers are not entitled to compensation under ORS 279.342 (3).

(4) Plaintiff is not entitled to recover on the theory of implied contract.

For the reasons which follow we reach the following conclusions: (1) Under the exception provided in ORS 279.342 (3), quoted above, police personnel were and still are excluded from the operation of the provisions of ORS 279.340; (2) plaintiff did not allege facts bringing himself and his fellow officers within the provisions of defendant City's municipal overtime legislation; and (3) plaintiff is not entitled to recover on the theory of

---

[1] Resolution No. XLI, § 6, City of Canby, Oregon, adopted March 25, 1963:

"Regular office employees of the City who are paid on a monthly basis shall work forty (40) hours a week Monday through Friday, and the City Recorder shall arrange their work schedules so that the City offices are kept open until 6:00 o'clock p.m. on Fridays. * * * Police officers employed on a monthly salary basis shall be required to work a minimum of forty-eight (48) hours a week, and they shall not be entitled to overtime pay for extra work unless overtime payment is first approved by the Councilman who heads their department."

implied contract. Therefore the trial judge correctly sustained defendant's demurrer to plaintiff's amended complaint.

In *State ex rel Heinig v. Milwaukie et al,* supra, our Supreme Court held that the employment and discharge of personnel in a city fire department were a matter of local, rather than state, concern and therefore the firemen's civil service law (ORS 242.702 to 242.990) was ineffective to require a home rule city to establish a state-mandated civil service system for city firemen.

Following *Heinig,* in *Boyle v. City of Bend,* 234 Or 91, 380 P2d 625 (1963), our Supreme Court had a similar question to resolve. The issue in *Boyle* was whether a state statute giving owners of property against which assessment for local improvements had been imposed the right to appeal to circuit court constituted an unauthorized interference in municipal affairs. The court held that the state statute authorizing an appeal to circuit court was not a matter of purely local concern, where the city charter was silent as to judicial review.

In explaining the basis of its conclusion in *Boyle* the court quoted with approval from *Dell v. City of Lincoln,* 170 Neb 176, 191, 102 NW2d 62, 73 (1960), the following:

" ' "The preservation of order, the enforcement of law, the protection of life and property, and the suppression of crime are attributes of state sovereignty and matters of state-wide concern, * * *." ' " 234 Or at 100.

We believe that municipal police officers stand on an entirely different footing from firemen so far as state regulation is concerned. Enforcement of the crim-

inal laws of the state is a matter of state-wide concern since the peace and safety of all citizens of the state are involved. In Oregon municipal police officers enforce state law as well as municipal ordinances. ORS 133.005, 133.225 et seq., 161.015. City officers can make arrests outside of their municipal boundaries. ORS 133.235 (2), 133.430 (1). Further, municipal police are now subject to minimum state standards of professional competence, training and state certification as provided by ORS 181.610 to 181.990.

■ We conclude from the foregoing that notwithstanding Art XI, § 2 of the Constitution, the police functions of a city as opposed to fire protection functions are a matter of general state-wide concern, and that the state interest is paramount.

Plaintiff argues that the exception of fire and police personnel in ORS 279.342 applies only to the provisions relating to "pay" for overtime; that "pay" means "discharging an indebtedness by the use of money," quoting from Black's Law Dictionary 1285 (4th ed 1951); and that this distinction is further established by the fact that ORS 279.340 (2) discusses compensation for overtime first in the form of payment if funds are budgeted for such purpose, and second in the form of compensatory time off, in the event the funds are not budgeted.

Plaintiff argues further that since plaintiff is no longer employed by defendant it is not possible for him to receive compensatory time off, and that therefore he is entitled to monetary damages in this amount.

Defendant contends that the term "pay" is all-inclusive and includes compensatory time off as well as monetary compensation.

■ We find a patent ambiguity exists in the above provisions. This arises because ORS 279.342 does not state expressly that police officers are barred from receiving compensatory time off as well as monetary compensation. Therefore, since the word "pay" in ORS 279.342 is susceptible to either construction, we must resort to extrinsic aids to interpretation. *Berry Transport, Inc. v. Heltzel,* 202 Or 161, 272 P2d 965 (1954); *Haas v. Myers,* 10 Or App 495, 500 P2d 1068 (1972).

■ The primary rule of statutory construction is to ascertain legislative intent. *State Highway Com. v. Rawson,* 210 Or 593, 312 P2d 849 (1957).

In order to ascertain the legislative intent we begin by examining the legislative history of the two sections of the Oregon Revised Statutes (ORS) involved.

It appears that ORS 279.340 and 279.342 had their genesis in a statute enacted in 1913 establishing the eight-hour day for all labor employed on public works (Oregon Laws 1913, ch 61, p 90). This statute was apparently not considered to apply to police and firemen employed by the city of Portland (*Albee v. Weinberger,* 69 Or 331, 138 P 859 (1914)), nor did it mention "compensatory time off" as a means of overtime compensation.

General Laws of Oregon 1915, ch 165, p 202, added the following:

"* * * *provided, however,* that the provisions of this section shall not apply to State institutions and departments."

The following exclusionary clause was added by General Laws of Oregon 1929, ch 224, p 237:

"* * * and provided further, that the provi-

sions of this section relating to double pay for overtime shall not in any wise apply to labor employed by any dock commission or port commission while engaged in handling cargo for maritime commerce * * *."

Then, General Laws of Oregon 1929, ch 358, p 412, added the following language:

"* * * and provided further, that nothing in this section contained shall apply to the employment on work funded partly or wholly by public funds, of foremen, watchmen and timekeepers paid on monthly rate * * *."

Oregon Laws 1931, ch 330, pp 567, 568, sets out three exclusionary clauses, as follows:

"* * * provided, however, that the provisions of this section relating to double pay for overtime shall not apply to labor employed by state institutions, or to forest fire fighting or to emergency work performed by the highway department when oiling highways and/or clearing highways for traffic; and provided further, that nothing in this section contained shall apply to the employment on work funded partly or wholly by public funds, of foremen, watchmen and timekeepers paid on monthly rate; and provided further, that provisions of this section relating to double pay for overtime shall not in any wise apply to labor employed by any dock commission or port commission while engaged in handling cargo for maritime commerce * * *."

Oregon Laws 1935, ch 206, p 305, added to the first exclusionary clause, ambulance or hearse service. Oregon Laws 1937, ch 360, p 532, added to the same clause, employes of an irrigation district actually engaged in water distribution for irrigation or domestic use.

Oregon Laws 1939, ch 548, p 1194, removed "* * * emergency work performed by the highway department

when oiling highways and/or clearing highways for traffic * * *." Oregon Laws 1939, ch 548, also added civil engineers, inspectors, superintendents, supervisors and checkers to the exclusionary clause for work funded partly or wholly by public funds and when paid by monthly rate.

Oregon Laws 1941, ch 345, p 601, put the two exclusionary clauses together and added the following language:

"* * * Labor directly employed by a county, municipality or municipal corporation in excess of eight hours in any one day, or 48 hours in any one week, shall be compensated for such overtime in such manner as the county, municipality or municipal corporation shall determine, and in no event shall such compensation be less than time and a half off, with pay, for such employment as shall be in excess of eight hours in any one day, or 48 hours in any one week."

In Oregon Laws 1951, ch 638, § 3, p 1125, the statutes with which we are now dealing were substantially broadened. For the first time the law was expressly made applicable to all "* * * [l]abor directly employed by a county, municipality, municipal corporation * * *." The key portion of that amendment provided as follows:

"Labor directly employed by a county, municipality, municipal corporation, school district, or subdivision in counties of less than 300,000 population shall be allowed overtime in such manner as may be determined by the county, school district, municipality, municipal corporation, or subdivision, and in no event shall such compensation be less than time and a half off for such employment as shall be in excess of eight hours in any one day, or 44 hours in any one week; provided, however, any county, school district, municipality, municipal cor-

poration or subdivision regularly working employes less than 44 hours per week shall be authorized to compensate for the overtime worked in excess of the regularly scheduled work time; and provided further, that the provisions of this section relating to pay for overtime shall not apply to labor employed in forest fire fighting, or to employes of any irrigation system district actually engaged in the distribution of water for irrigation or domestic use, or to employes of any fire or police department of any municipal corporation." Ch 638, § 3.

It is important to note that in broadening the statute the legislature specifically provided that the new provision would not apply to "employes of any fire or police department of any municipal corporation."

In Oregon Laws 1953, ch 579, § 1, p 1097, these statutes were again amended by adding employes of third class school districts to those classes of public employes who were excluded from overtime compensation.

In 1955 and 1967, ORS 279.342 was further amended by adding additional classes of public employes who were excluded from overtime compensation.

■ Since the language of payment was not changed after the provision for compensatory time off was added in 1941, we conclude that the intention of the legislature was to make both monetary compensation and compensatory time off alternative means by which covered employes were to be given overtime compensation. By the same token, it is our conclusion that municipal police and fire employes (among others) were also excluded from receiving either type of overtime compensation. Therefore, inasmuch as all municipal police and fire employes have since 1951 been

excluded from receiving the benefits of the overtime law, plaintiff is barred from maintaining this action under the provisions of ORS 279.340.

As we have already pointed out, plaintiff did not allege facts bringing himself and his assignors within the provisions of defendant's municipal overtime legislation. He does not contend otherwise on this appeal.

Finally, it is our conclusion that plaintiff's contention that in any event he is entitled to recover on the theory of implied contract cannot be sustained.

██ One accepting a public office or employment does so with the knowledge that his salary and compensation are subject to the law governing such matters, including ORS 279.340 and 279.342. *Personnel Division v. St. Clair,* 10 Or App 106, 498 P2d 809, Sup Ct *review denied* (1972). *See also,* 4 McQuillin, Municipal Corporations 12, § 12.174c et seq (rev 1968).

█ Nor can we accept plaintiff's argument that the denial of overtime compensation violates the standards set forth in the Fifth Amendment to the United States Constitution and deprives plaintiff of his property without due process of law guaranteed by the Fourteenth Amendment.

Plaintiff and his assignors are presumed to have been aware of, and accepted, the terms and conditions of their employment, including their salaries, at the time they assumed their duties with defendant City. It may be assumed that in fixing their salaries the city council of defendant took into consideration the fact that police officers would be called upon to perform their duties for longer periods of time than other city employes.

As the court said in rejecting this same argument in a similar case (*N. J. State Police Assoc. v. Mayor, &c of Irvington,* 121 NJ Super 321, 297 A2d 10, 12 (1972)), if the consequences are unjust or inequitable, then the remedy of the claimant is to appeal to the appropriate legislative body or bodies to change the law relative to overtime compensation. *Accord: Los Angeles Fire & Police Protective League v. City of Los Angeles,* 23 Cal App3d 67, 76, 99 Cal Rptr 908, 915 (1972).

Affirmed.